**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

| | | |
|---|---|---|
| FATHI AWAD, | ) | No. ED CV 08-1140-PLA |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| v. | ) | |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on September 2, 2008, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed Consents to proceed before the undersigned Magistrate Judge on September 18, 2008, and October 9, 2008. The parties filed a Joint Stipulation on April 4, 2009, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on May 23, 1954. [Administrative Record ("AR") at 53.]  He has a seventh grade education [AR at 69], and past relevant work experience as a stock clerk, sales clerk and cashier.  [AR at 13, 66-67, 103.]

On Janaury 31, 2005, plaintiff protectively filed his applications for Disability Insurance Benefits and Supplemental Security Income payments, alleging that he has been unable to work since March 2, 2003,[1] due to arthritis in his back, arms, and legs, and back spasms when lifting and in the cold.  [AR at 52-56, 65, 233-36.]  After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 12, 51, 238-49.]  A hearing was held on April 11, 2006, at which plaintiff appeared with counsel and testified on his own behalf.  Testimony was also received from a vocational expert and a medical expert.  [AR at 250-75.]  On December 27, 2006, the ALJ determined that plaintiff was not disabled.  [AR at 12-16.]  Plaintiff requested review of the hearing decision.  [AR at 8.]  The Appeals Council denied plaintiff's request for review on July 8, 2008.  [AR at 5-7.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1]   This date was amended at the hearing to October 14, 2004.  [AR at 12, 253-54.]

1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner.  Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1039-40 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

## A.      THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

1   in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

2   sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled

3   and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform

4   past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie

5   case of disability is established.  The Commissioner then bears the burden of establishing that

6   the claimant is not disabled, because he can perform other substantial gainful work available in

7   the national economy.  The determination of this issue comprises the fifth and final step in the

8   sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966

9   F.2d at 1257.

10

11   **B.      THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

12          In this case, at step one, the ALJ represented that there is no evidence that plaintiff has

13   engaged in any substantial gainful activity since the alleged onset date of the disability.[2] [AR at 13.]

14   At step two, the ALJ concluded that plaintiff has the "severe" impairment of mild arthritis of the

15   lumbar spine.  [AR at 14.]  At step three, the ALJ determined that plaintiff's impairment does not

16   meet or equal any of the impairments in the Listing.  [AR at 14.]  The ALJ further found that plaintiff

17   retained the residual functional capacity ("RFC")[3] to perform the full range of medium work,[4] with

18   the limitations that "he can sit 8 hours in an 8 hour day, stand and walk 6 hours in an 8 hour day,

19   changing positions briefly each hour.  He can lift and carry 50 pounds occasionally, 25 pounds

20   frequently.  He can occasionally climb stairs, balance, bend, stoop, kneel, crouch and crawl.  He

21   should avoid climbing ladders or scaffolds.  He should avoid unprotected heights or dangerous

22

23          [2]   The ALJ also determined that plaintiff met the insured status requirements of the
24   Social Security Act through June, 2008.  [AR at 12.]

25          [3]   RFC is what a claimant can still do despite existing exertional and nonexertional
    limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26          [4]   Medium work is defined as work involving "lifting no more than 50 pounds at a time with
27   frequent lifting or carrying of objects weighing up to 25 pounds."  20 C.F.R. §§ 404.1567(c) and
    416.967(c).  If a plaintiff is able to perform medium work, he or she is also deemed able to perform
28   sedentary and light work.  See id.

1  machinery." [Id.]  At step four, the ALJ concluded that plaintiff was capable of performing his past

2  relevant work as a food sales clerk.  [AR at 15.]  Accordingly, the ALJ determined that plaintiff is

3  not disabled.  [AR at 15-16.]

4

5                                             **V.**

6                              **THE ALJ'S DECISION**

7          Plaintiff contends that the ALJ failed to: (1) properly consider the State Agency findings

8  regarding his frequent postural limitations; (2) properly consider plaintiff's credibility; (3) properly

9  consider the actual physical and mental demands of his past relevant work; and (4) pose a

10 complete hypothetical question to the vocational expert.  Joint Stipulation ("Joint Stip.") at 2.  As

11 set forth below, the Court respectfully disagrees with plaintiff, and affirms the ALJ's decision.

12

13 **A.     STATE AGENCY FINDINGS/FAILURE TO POSE COMPLETE HYPOTHETICAL**

14         Plaintiff contends that the ALJ failed to properly consider the State Agency physician's

15 finding that plaintiff is "frequently limited in his ability to stoop and crouch."  Joint Stip. at 3.

16 Specifically, plaintiff asserts that the ALJ "rejected these findings without any explanation

17 whatsoever" in determining that he can, among other things, "occasionally" stoop and crouch.

18 Joint Stip. at 3-5.  Plaintiff further contends that the hypothetical question posed to the vocational

19 expert did not include the limitations pertaining to stooping and crouching.  Joint Stip. at 12-14.

20         Plaintiff's contentions as to both of these issues lack merit.  On May 11, 2005, a State

21 Agency physician completed a Physical Residual Functional Capacity Assessment as to plaintiff,

22 in which he, among other things, checked the box for "[f]requently" concerning the postural

23 limitations of stooping and crouching.  [AR at 153.]  Plaintiff interprets this finding as meaning that

24 he is frequently limited in his ability to perform these functions; thus, when the ALJ determined that

25 he can occasionally stoop and crouch (i.e., he is not frequently limited in this regard), the ALJ was

26 required to provide legally sufficient reasons to reject the State Agency physician's findings.  The

27 Assessment itself, however, defines the term "[f]requently" to mean "occurring one-third to two-

28 thirds of an 8-hour workday," and "[o]ccasionally" to mean "occurring from very little up to one-third

1  of an 8-hour workday." [AR at 151.]  See also Social Security Ruling[5] 83-10.  Thus, the State

2  Agency physician in fact found that plaintiff **is able** to stand and crouch frequently**,** not that he is

3  frequently limited in this regard.  When the ALJ concluded that plaintiff can only occasionally stoop

4  and crouch, this was in fact an accommodation to plaintiff from this finding.  As such, there was

5  no error in the ALJ's review of the State Agency physician's Assessment.  For the same reason,

6  the ALJ did not pose an incomplete hypothetical to the vocational expert when that hypothetical

7  assumed an individual who could occasionally stoop and crouch. [AR at 265.]  Remand is not

8  warranted on either of these issues.

9

10  **B.      PLAINTIFF'S CREDIBILITY**

11          Plaintiff contends that the ALJ failed to properly consider plaintiff's testimony of debilitating

12  pain.  Specifically, plaintiff argues that the ALJ did not provide legally sufficient reasons for

13  rejecting plaintiff's testimony.  Joint Stip. at 5-9.

14          Whenever an ALJ discredits a claimant's testimony, the ALJ must make explicit credibility

15  findings.  See Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); see also Dodrill v. Shalala,

16  12 F.3d 915, 918 (9th Cir. 1993) (if the ALJ does not accept a claimant's testimony, he must make

17  specific findings rejecting it).  The ALJ can reject a claimant's allegations "only upon (1) finding

18  evidence of malingering, or (2) expressing clear and convincing reasons for doing so."  Benton v.

19  Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003); see Lester, 81 F.3d at 834 (the ALJ must provide

20  clear and convincing reasons for discrediting a claimant's testimony as to severity of symptoms

21  when there is medical evidence of an underlying impairment).  The factors to be considered in

22  weighing a claimant's credibility include: (1) the claimant's reputation for truthfulness; (2)

23  inconsistencies either in the claimant's testimony or between the claimant's testimony and his

24  conduct; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from

25

26          [5]   Social Security Rulings ("SSR") do not have the force of law.  Nevertheless, they

27  "constitute Social Security Administration interpretations of the statute it administers and of its
own regulations," and are given deference "unless they are plainly erroneous or inconsistent with

28  the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

physicians and third parties concerning the nature, severity, and effect of the symptoms of which the claimant complains.  See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also 20 C.F.R. §§ 404.1529(c), 416.929(c).  "It is not sufficient for the ALJ to make only general findings."  Dodrill, 12 F.3d at 918.  Absent evidence showing that the plaintiff is malingering, the ALJ must state which testimony is not credible and identify the evidence that undermines the claimant's complaints.  See id.; see also Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (quoting Lester, 81 F.3d at 834).  If properly supported, the ALJ's credibility determination is entitled to "great deference."  See Green v. Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

As neither party points to any evidence in the record of malingering by plaintiff, the ALJ was required to justify her credibility determination with clear and convincing reasons.  See Benton, 331 F.3d at 1040.  In the decision, the ALJ determined that plaintiff's statements concerning the extent, intensity, and duration of his subjective symptoms, limitations and restrictions were "not fully credible."  [AR at 14.]  The ALJ discounted plaintiff's subjective complaints of pain because: (1) he did not establish a medically determinable impairment that would reasonably be expected to produce such symptoms; and (2) plaintiff has not required surgery, extended periods of hospital confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic, or other significant forms of treatment commonly prescribed for intense pain, including strong medication.  [AR at 14.]  As discussed below, the Court has considered the ALJ's reasons for discounting plaintiff's subjective testimony, and finds that they are clear and convincing.

The absence of objective medical evidence to support plaintiff's subjective complaints is a factor that an ALJ can consider in discrediting symptom testimony, even though it cannot be the sole factor.  See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (an "adjudicator may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.") (emphasis added); see also Light v. Social Security Administration, 119 F.3d 789, 792 (9th Cir. 1997) ("because a claimant need not present clinical or diagnostic evidence to support the severity of

7

his pain . . . a finding that the claimant lacks credibility cannot be premised wholly on a lack of medical support for the severity of his pain").  "Symptoms can sometimes suggest a greater severity of impairment than is demonstrated by objective and medical findings alone . . . [D]irect medical evidence of the cause and effect relationship between the impairment and the degree of claimant's subjective complaints need not be produced . . . The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just one factor to be considered in evaluating the credibility of the testimony and complaints." Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987) (quoting Polaski v. Heckler, 751 F.2d 943, 948 (8th Cir. 1984), vacated and remanded on other grounds, 476 U.S. 1167, 106 S. Ct. 2885, 90 L. Ed. 2d 974 (1986)); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while medical evidence alone cannot discredit testimony as to pain, it is one factor which the ALJ is permitted to consider).

Plaintiff points to no specific evidence in the record that supports the severity of his complaints.  The ALJ, on the other hand, noted a physical examination that "was essentially normal," x-rays that show "no more than mild findings," no abnormalities in plaintiff's gait, no evidence of chronic pain such as diffuse atrophy or muscle wasting, and no use of assistive devices. [AR at 14.] The ALJ's findings are supported by the record.  An examination from April, 2005, found that plaintiff had a normal gait and balance, did not require an assistive device for ambulation, had normal muscle bulk and tone without atrophy, with pain on back motion and mildly decreased range of motion of the back.  There was no sign of radiculopathy.  He had normal range of motion of the joints without any swelling or erythema.  The examiner concluded that plaintiff could stand and/or walk about six hours in an eight hour work day, sit for six hours in an eight hour work day, lift and/or carry 50 pounds occasionally and 25 pounds frequently, and was otherwise unlimited in pushing and pulling. [AR at 111-14.]  X-rays taken at that time showed only mild degenerative disease at L4-5. [AR at 115.]  Even tests from February, 2003 (well before the October, 2004, amended onset date) showed only some early osteophyte formation between C3-7 of the cervical spine, very early discogenic change at T12-L1 and L2-3, and early osteophyte formation at L4.  The remainder of those examinations was normal. [AR at 230.]  Since, as set forth below, the ALJ has provided an additional reason for rejecting plaintiff's credibility that is clear

1    and convincing, the absence of objective medical evidence is a legitimate basis to also reject his

2    credibility.

3           An ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's

4    testimony of disabling limitations or disabling pain.  See Fair v. Bowen, 885 F.2d 597, 604 (9th Cir.

5    1989) (an ALJ may rely on a claimant's conservative treatment regimen to reject a claimant's

6    testimony of disabling limitations or disabling pain); see also Johnson v. Shalala, 60 F.3d 1428,

7    1434 (9th Cir. 1995) (that the claimant received only conservative treatment for back injury is a

8    clear and convincing reason for disregarding testimony that the claimant is disabled).   Here,

9    plaintiff's treatment was indeed conservative.   The ALJ properly noted that the medical records

10   were bereft of any evidence indicating that plaintiff required surgery, extended periods of hospital

11   confinement, emergency room treatment, use of a TENS unit, participation in a pain control clinic,

12   or other significant forms of treatment commonly prescribed for intense pain, including strong

13   medication.  [AR at 14.]  Other than referring to plaintiff's testimony and his statements in a pain

14   questionnaire (Joint Stip. at 5), plaintiff does not point to any evidence of treatment he received,

15   let alone treatment that could be deemed more than conservative.  As such, the ALJ's rejection

16   of plaintiff's treatment as conservative was entirely supported by the record and is proper.

17          "While an ALJ may certainly find testimony not credible and disregard it . . ., [courts] cannot

18   affirm such a determination unless it is supported by specific findings and reasoning."  Robbins

19   v. Social Security Administration, 466 F.3d 880, 884-85 (9th Cir. 2006).  Here, the ALJ provided

20   clear and convincing reasons for discounting plaintiff's subjective testimony.  Her conclusion is

21   entitled to deference.  See Morgan v. Commissioner of the Social Security Administration, 169

22   F.3d 595, 599 (9th Cir. 1999) ("questions of credibility and resolutions of conflicts in the testimony

23   are functions solely of the Secretary"); see also Fair, 885 F.2d at 604 (where the ALJ "has made

24   specific findings justifying a decision to disbelieve an allegation of excess pain, and those findings

25   are supported by substantial evidence in the record," reviewing courts must not engage in second

26   guessing); see, e.g., Fuller v. Astrue, 2008 WL 906447, *6 (D. Ariz. Mar. 31, 2008) (ALJ's

27   credibility determination is entitled to deference if her reasoning is supported by substantial

28   evidence in the record and is "'sufficiently specific to allow a reviewing court to conclude the

adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony.'") (citing Bunnell, 947 F.2d at 345).  Remand is not  warranted on this issue.

## C.    DEMANDS OF PAST RELEVANT WORK

Plaintiff argues that the ALJ, in finding that plaintiff can return to his past relevant work as a food sales clerk, did not consider the actual mental and physical demands of that work.  Citing SSR 82-62, plaintiff contends that the ALJ erred in not making specific findings about the physical and mental demands and other job requirements of the past relevant work.  Joint Stip. at 9-12.

At step four of the sequential evaluation process, the ALJ is required to engage in an individualized assessment of the claimant's ability to perform the requirements of his past relevant work.  Under 20 C.F.R. §§ 404.1520(f) and 416.920(f), a claimant will be found "not disabled" if he retains the RFC to perform: "(1) [t]he actual functional demands and job duties of a particular past relevant job; *or* (2) [t]he functional demands and job duties of the occupation as generally required by employers throughout the national economy." SSR 82-61 (emphasis in original).  The claimant has the burden of showing that he or she can no longer perform his or her past relevant work.  See 20 C.F.R. §§ 404.1520(e), 416.920(e); see also Clem v. Sullivan, 894 F.2d 328, 331-32 (9th Cir. 1990).  Although the claimant has the burden of proof at step four of the evaluation process, "the ALJ still has a duty to make the requisite factual findings to support his conclusion" as to whether plaintiff can perform his past relevant work.  See Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001) (despite the fact that the claimant has the burden at step four, "the ALJ is [not] in any way relieved of his burden to make the appropriate findings to insure that the claimant really can perform his or her past relevant work"); see also 20 C.F.R. §§ 404.1520, 416.920.

According to SSR 82-62, a determination that a claimant has the capacity to perform a past relevant job must contain among the findings the following specific findings of fact: (1) a finding of fact as to the claimant's RFC; (2) a finding of fact as to the physical and mental demands of the past job/occupation; and (3) a finding of fact that the claimant's RFC would permit a return to his or her past job or occupation.  See SSR 82-62; see also Pinto, 249 F.3d at 845 (ALJ required to

10

make "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work"); Acosta v. Apfel, 15 F.Supp.2d 947, 950-51 (C.D. Cal. 1998) (". . . [ALJ] must determine the physical and mental demands of the claimant's 'past relevant work' and whether the claimant still has the capacity to meet those demands").  Any determination regarding a claimant's ability to perform past work "must be developed and explained fully in the disability decision" and "every effort must be made to secure evidence that resolves the issue as clearly and explicitly as circumstances permit."  See SSR 82-62 ("The decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications . . . ").

Based on the ALJ's determination of plaintiff's residual functional capacity, and the testimony of the vocational expert that an individual with the same vocational factors as plaintiff could perform work as a food sales clerk, the ALJ found that he "is capable of performing his past relevant work as a food sales clerk."[6]  [AR at 15.]  This is substantial evidence that supports the ALJ's conclusion.  See Sample v. Schweiker, 694 F.2d 639, 643-44 (9th Cir. 1982) (a vocational expert's testimony in a disability proceeding "is valuable only to the extent that it is supported by medical evidence"); see also Andrews, 53 F.3d at 1044 (in order for the vocational expert's testimony to constitute substantial evidence, the ALJ must pose hypothetical questions that "consider all of the claimant's limitations") (citing Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989)); Osenbrock v. Apfel, 240 F.3d 1157, 1163-64 (9th Cir. 2001) (the ALJ is required to pose hypothetical questions based upon medical assumptions supported by substantial evidence in the record that reflect the claimant's limitations) (citing Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996)).  Further, since the ALJ made a determination at step four of the sequential analysis, she was not even required to elicit the testimony of a vocational

---

[6]    The hypothetical question that the ALJ posed to the vocational expert set out all of plaintiff's impairments for the vocational expert's consideration.  [AR at 265-67.]  The ALJ's description of plaintiff's limitations was "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

1    expert.  See Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996); see also Matthews v. Shalala, 10

2    F.3d 678, 681 (9th Cir. 1993) (finding that "since [the claimant] failed to show that he was unable

3    to return to his previous job as a receiving clerk/inspector, the burden of proof remained with [the

4    claimant]" and "[t]he vocational expert's testimony was thus useful, but not required").  In addition,

5    it is plaintiff's burden to show that he "is precluded from engaging in not only his 'previous work,'

6    but also from performing 'any other kind of substantial gainful work' due to such impairment."

7    Matthews, 10 F.3d at 680 (quoting 42 U.S.C. § 423(d)(1)(A)); see Villa v. Heckler, 797 F.2d 794,

8    798 (1986) ("[t]he claimant has the burden of proving an inability to return to his former *type* of

9    work and not just to his former job.") (emphasis added).   Plaintiff has made no such showing.

10          Notably, plaintiff contends only that the ALJ failed to consider the actual mental and

11   physical demands of his past relevant work, without any indication as to the limitations that the ALJ

12   should have considered but did not.   Joint Stip. at 9-11.   As noted above, at step four of the

13   sequential evaluation process, the ALJ relied on the vocational expert's testimony that, according

14   to the Dictionary of Occupational Titles ("DOT"), "[plaintiff's] past relevant work as a food sales

15   clerk was semi-skilled and required light work activity."   [AR at 15.]   See Doyal v. Barnhart, 331

16   F.3d 758, 760-61 (10th Cir. 2003) (at step four of the sequential evaluation process, an ALJ can

17   comply with the requirements set forth in SSR 82-62 if he quotes the vocational expert's testimony

18   with approval in support of his own findings at phases two and three of the step four analysis); see,

19   e.g., Mora v. Astrue, 2008 WL 5076450, *2 (C.D. Cal. Dec. 1, 2008) ("Information from the [DOT]

20   or the testimony of a [vocational expert] may be used to ascertain the demands of an occupation

21   as ordinarily required by employers throughout the national economy.") (citing SSR 82-61).   The

22   vocational expert's testimony that an individual with plaintiff's vocational profile could perform the

23   job of food sales clerk, DOT No. 290.477-018 [AR at 106], is not inconsistent with the description

24   in the DOT concerning the food sales clerk job.   Further, at the hearing, although given an

25   opportunity to cross-exam the vocational expert, plaintiff's counsel did not do so.   [AR at 268.]   Nor

26   did plaintiff's counsel point out any way in which the residual functional capacity assigned to

27   plaintiff by the ALJ was in fact inconsistent with the physical and mental demands of plaintiff's past

28   relevant work as a food sales clerk as set forth in the DOT.   Therefore, even if the ALJ more

thoroughly discussed the physical and mental demands of plaintiff's past relevant work, her step four determination and nondisability finding would have remained the same.  Thus, any error by the ALJ at step four was harmless.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."); see also Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (holding that an ALJ's error is harmless when it "does not negate the validity of the ALJ's ultimate conclusion"); Robbins, 466 F.3d at 885 (an error is harmless if it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination'").  Accordingly, remand is not warranted on this issue.

## VI.

## CONCLUSION

**IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative, remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included or submitted to any online service such as Westlaw or Lexis.**

DATED: July 27, 2009

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE

13